IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| OXFORD FEDERAL, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 23-737 |
| | ) | (Judge Meyers) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**LETTER OF REQUEST**
**Request for International Judicial Assistance**
**Pursuant to the Hague Convention of 18 March 1970 on the**
**taking of Evidence in Civil or Commercial Matters**
**By the United States Court of Federal Claims**
**Hon. Edward H. Meyers**

**TO THE DIRECTORATE OF COURTS:**

The U.S. Court of Federal Claims presents its compliments to the appropriate judicial authority of Israel and requests judicial assistance to obtain documents from members of the Israeli Ministry of Defense, the Israeli Defense Forces, and the Israeli Air Force (collectively, the "MOD") pertaining to a contract awarded under the U.S. Department of State's Foreign Military Sales ("FMS") program in Israel. This program requires that American-funded construction contracts be administered by the United States Army Corps of Engineers ("USACE") and awarded to American prime contractors for the ultimate benefit of the State of Israel acting through the MOD. The project that is the subject of this request involved the construction of an office building, technical shed, and related appurtenances at Tel Nof Air Force Base near Gedera, Israel.

This court requests the assistance described herein as necessary in the interests of justice and pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil and Commercial Matters, as adopted and implemented in the United States of America at 28 U.S.C. § 1781, and in the State of Israel by Judicial Assistance Between Countries Law, 5758-1998 (the "Judicial Assistance Law") and the rules and regulations promulgated thereunder.

Documentary evidence is intended for use in the above-captioned litigation, a civil matter. In the view of this Court, the requested evidence will be highly relevant to whether the Plaintiff is entitled to additional monetary compensation due to a differing site condition at the project site. Specifically, Plaintiff contends that underground pipes carrying water originating from beyond the project area discharged that water into the soils beneath the area referred to by the parties as the TNO site - one of two sites involved in the awarded project. Plaintiff alleges that the

expulsion of this water from the pipes flooded the TNO site and impeded Plaintiff's productivity. Plaintiff further alleges that the flooding of the site had a domino effect on the timely performance of other work elements, which resulted in Plaintiff's untimely completion of the project. Pertinent to this request, Plaintiff contends that the MOD was aware certain communication manholes, which were under MOD's control, filled with water year-round and that pipes extending from these manholes carried groundwater into Plaintiff's work site. Lastly, Plaintiff maintains that USACE informed the MOD on several occasions that pipes originating outside of the project site were expelling water into the work area and asked the MOD to take action to arrest the flow of water into the TNO site so as to no longer impede Plaintiff's progress.

This request is made with the understanding that it will in no way require any persons to commit any offense, or to undergo a broader form of inquiry than they would if litigation were conducted in Israel. In the proper exercise of its authority, this Court has determined that the evidence of the MOD's knowledge regarding the alleged presence of groundwater in communication manholes in the vicinity of Plaintiff's project site and the existence of underground piping carrying water to, and discharging water beneath, the TNO site as well as internal MOD discussions regarding the subject and its impact on the overall performance of Plaintiff's work cannot be secured except by the intervention of the Directorate of Courts.

1. **Sender:**

   Hon. Edward H. Meyers
   United States Court of Federal Claims
   Howard T. Markey National Courts Building
   717 Madison Place, NW
   Washington, DC 20439

2. **Central Authority of the Requested State:**

   Directorate of Courts
   Legal Assistance to Foreign Countries
   22 Kanfei Nesharim Street
   Jerusalem 9546435
   Israel

3. **Person to whom the executed request is to be returned:**

   Michael Payne, Esq.
   Cohen Seglias Pallas & Greenhall
   & Furman PC
   1600 Market Street, 32nd Floor
   Philadelphia, PA 91037
   Tel: 215-564-1700
   Fax: 267-238-4456
   Email: mhp@cohenseglias.com

Counsel for Plaintiff

4. The U.S. Court of Federal Claims requests a response to this Letter of Request by July 2, 2025.

5. IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

    **a. Requesting Judicial Authority:**

    United States Court of Federal Claims
    Howard T. Markey National Courts Building
    717 Madison Place, NW
    Washington, DC 20439
    USA

    **b. To the competent authority of:**

    Israel

    **c. Name of case and identifying number:**

    Oxford Federal LLC v. United States, COFC No. 23-737, United States Court of Federal Claims

6. Names and addresses of the parties and their representatives (including representatives in the requesting state) (article 3(b)):

    **a. Plaintiff**

    Oxford Federal LLC
    10375 Park Meadows Drive
    Suite 480
    Lone Tree, CO 80124-6820

    **Representatives**

    Cohen Seglias Pallas & Greenhall
    & Furman PC
    Michael H. Payne, Esq.
    1600 Market Street, 32nd Floor
    Philadelphia, PA 91037
    USA
    Tel: 215-564-1700
    Fax: 267-238-4456
    Email: mhp@cohenseglias.com

**b. Defendant**

The United States of America

**Representatives:**

The United States Department of Justice
Matthew J. Carhart
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 307-0313
Facsimile: (202) 353-0461
Email: Matthew.Carhart@usdoj.gov

**c. Other parties:**

There are no other parties to the subject proceeding

7.

**a. Nature of the proceedings (divorce, paternity, breach of contract, product liability, etc.) (article 3(c)):**

This matter involves a contractual dispute between the Plaintiff and Defendant, acting through the United States Army Corps of Engineers, with respect to a construction project procured through the United States Department of State's Foreign Military Sales program, with the project being obtained for the use and benefit of the state of Israel, acting through the Israeli Ministry of Defense.

**b. Summary of complaint:**

The summary that follows reflects Plaintiff's allegations and the characterization of its case. This summary does not, and is not intended to, represent the opinion or endorsement of this Court as to the merit of any matter raised by the allegations contained in Plaintiff's complaint, nor should it be considered an exhaustive description of each and every cause of action Plaintiff has brought in the litigation.

Plaintiff was awarded a contract by the United States Army Corps of Engineers ("USACE") to construct certain structures at Tel Nof Air Force Base near Gedera Israel for the use and benefit of the Israeli military. Shortly after excavation work had commenced, and as pile work for the TNO building's foundation was in process, the contactor observed a significant amount of groundwater in the site excavations. The water appeared to be coming up through the soil. It was then discovered that a

series of underground pipes terminating underneath the TNO site were expelling groundwater into the site's soil. The soil, consisting of red, swelling clay, acted as a bathtub by preventing permeation of the water into the ground. Instead, the water was retained largely in the area where it had been expelled from the pipes and then pushed upwards through the soil under hydrostatic pressure. This caused the project site to flood. And so, Plaintiff had to expend additional resources and efforts to dewater the site.

Additionally, Plaintiff alleges that flooding of the TNO site required Plaintiff to often work in muddy conditions, which impeded Plaintiff's productivity. Consequently, delivery of the project was delayed. The flooding also caused issues with stabilization of the subsurface necessary to provide adequate solidity for the TNO building's foundation. As a result, Plaintiff had to add a new type of stone layer to strengthen the soil against the saturated subsurface. The MOD failed to act on USACE's repeated requests to do something to stop the flooding. It was only after months had passed that the MOD devised a plan to stop the water. USACE requested Plaintiff provide a change proposal to perform the work to stop the water from flowing into the site.

Aside from flooding of the site, there were other instances of delays and changes to the work, to include time and monetary impacts related to the use of lightweight concrete, missing waterproofing details on government-provided drawings, government delay in selecting handrail features for an exterior staircase, and the failure to make payment to Plaintiff for work it performed.

**c.  Summary of Defenses (and counterclaims)**

The summary that follows reflects Defendant's characterization of its defenses in this matter. This summary is not intended to represent the opinion of this Court as to the merits of any defense discussed therein, nor should it be considered inclusive of every defense that the Defendant has or that it may raise in this litigation.

As to the piping beneath the project site, Defendant does not admit that this constituted a differing site condition. Defendant also contends that, to date, Plaintiff has failed to show the issues raised in the complaint impacted the critical path of the project and delayed the project's overall completion date. The government asserts that because Plaintiff was late in delivering the project, and as the contract contained a liquidated damages provision, any outstanding payment due Plaintiff was less than the amount of liquidated damages which Plaintiff owed Defendant for the project's late completion. Defendant also maintains that certain claims were unconditionally released by Plaintiff pursuant to a contract modification executed by the parties. Defendant has not asserted any counterclaims against Plaintiff.

8.

    **a. Evidence to be obtained or other judicial act to be performed (3(d)):**

    On behalf of Plaintiff, this Court seeks documents, to include, but not limited to email, related to the MOD's knowledge, discussions, considerations, studies, analysis, opinions, assessments or similar internal communications concerning the project and project site in general, and the issue of subsurface piping, flooded communication manholes, and TNO project site flooding, specifically.

    **b. Purpose of the evidence or judicial act sought:**

    The purpose of the evidence sought is to ascertain the knowledge of the MOD as to the project in general, and the issue of subsurface piping, flooded communication manholes, and project site flooding, specifically. Additionally, this evidence may reflect the internal considerations of the MOD after having been notified by the United States Army Corps of Engineers of the existence of flooding at the TNO site and their request for MOD action to stop the water from further infiltrating the site.

9. **Identity and address of any person to be examined (article 3(e)):**

    At this time, Plaintiff is not seeking the examination of any MOD member or employee. Plaintiff may seek the examination of specific MOD members or employees at a later date. If Plaintiff seeks the examination of specific MOD members or employees, then this Court shall submit a supplemental Letter of Request.

10. **Questions to be put to the persons to be examined or statement of the subject matter about which they are to be examined (article 3(f)):**

    Not Applicable.

11. **Documents or other property to be inspected (article 3(g)):**

    See Paragraph 8 above. The documents to be produced and inspected include electronic correspondence, letters, memoranda for the record, notes, reports, studies, analyses, journal entries, calendar entries, meeting minutes, records of meetings, summaries of conversations and/or meetings, drawings, sketches, videotapes, and photographs, or similar documents. This request includes drafts, and revisions to drafts, of such documents. Searches for these materials should include documents and/or electronically stored information from January 1, 2018, up and through the present day.

    Note that the above evidence sought is solely required for use in this litigation and for no other purpose.

6

12. **Any requirement that the evidence be given on oath or affirmation and any special form to be used (article 3(h)):**

> This Court respectfully requests that production of the requested evidence be accompanied by an affirmation by a member of the MOD with personal knowledge that the documents provided in response to this request are true and correct copies of original documents and are being produced in the manner in which they are kept in the ordinary course of business.

13. **Special methods or procedures to be followed:**

> This Court requests that the MOD produce all documents electronically in their native file format. Responsive electronically stored information (ESI) (with the exception of spreadsheet and presentation files discussed below), and imaged hard copy shall be produced per the following guidelines in Exhibit A hereto.

> All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format). The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata. No alteration shall be made to file names or extensions for responsive native electronic files.

> The term "Native File Format" means a file saved in the format as designated by the original application used to create it (e.g. a DOC or DOCX file created by Microsoft Word or a .pst file created by Microsoft Outlook).

14. **Request for notification of the time and place for execution of the request and identity and address of any person to be notified (article 7):**

> Please notify the following counsel regarding the time and place for the execution of the request:

> Michael H. Payne, Esq.
> Cohen Seglias Pallas & Greenhall
> & Furman PC
> 1600 Market Street, 32nd Floor
> Philadelphia, PA 91037
> USA
> Tel: 215-564-1700
> Fax: 267-238-4456
> Email: mhp@cohenseglias.com

> Counsel for Plaintiff

15. **Request for attendance or participation of judicial personnel of the requesting authority at the execution of the Letter of Request:**

No attendance of judicial personnel is requested.

16. **Specification of privilege or duty to refuse to give evidence under the law of the state of origin:**

> No previous refusal to provide the requested documentation based on a privilege or a duty has been asserted.

17. The fees and costs which are reimbursable under the second paragraph of article 14 or under article 26 of the Convention will be borne by **Defendant, the United States Government**.

Date: April 7, 2025

Hon. Edward H. Meyers
Judge for the U.S. Court of Federal
Claims

8

## <u>Exhibit A</u>

## Plaintiff's Production Specifications

Scanned paper, loose electronic files, and e-mails with corresponding attachments will be converted and produced as single page group IV TIFF files (or color JPGs when requested) with a corresponding Opticon image load file. All associated metadata will be produced in a .DAT load file with standard Concordance delimiters.

| FIELD NAME | DESCRIPTION | EXAMPLE |
|---|---|---|
| PRODNO | Starting imagekey of record | CSPGF00000001 |
| ENDPRODNO | Ending imagekey of record | CSPGF00000005 |
| BEGATTACH | Starting imagekey of family | CSPGF00000001 |
| ENDATTACH | Ending imagekey of family | CSPGF00000010 |
| PGCOUNT | Number of pages in the record | 6 |
| NATIVELINK | Hyperlink to native file | Z:\VOL001\NATIVES\00\CSPGF00000001.doc |
| CUSTODIAN | Custodian of the record captured during processing | Doe_John |
| FILEPATH | Original path of the file | Path\Folder?\My Documents |
| FILENAME | Name of the file | My Meeting.doc |
| FILEEXT | Extension of the file | DOC |
| FILETYPE | Classification assigned by the processing software | Microsoft Word Document |
| FILESIZE | Size in bytes of the record | 3526 |
| TITLE | Data stored in the title metadata field | Agenda for Weekly Meeting |
| AUTHOR | Data stored in the author metadata field | jdoe |
| SUBJECT | Subject of the email or the data stored in the subject metadata field | Meeting Agenda |
| FROM | Email address and display name of the sender of the email | John Doe <jdoe@company.com> |
| TO | Email address(es)and display name(s) of the recipient(s) of the email | Frank Smith <frank.smith@mycompany.com>;Jane Doe <jane.doe@mycompany.com> |
| CC | Email address(es)and display name(s) of the CC(s) of the email | Joseph Roberts <jroberts@company.com>;Mark Smith <msmith@company.com> |
| BCC | Email address(es)and display name(s) of the BCC(s)of the email | Joseph Roberts <jroberts@company.com>;Mark Smith <msmith@company.com> |
| ATTACHCOUNT | Number of email attachments | 3 |
| ATTACHLIST | List of files attached to email | File 1.xls;File 3.zip |
| SENT_DATE | Sent date of the email | 09/15/2012 |
| SENT_TIME | Sent time of the email (24hr format) | 13:30:25 |
| RCVD_DATE | Received date of the email | 09/15/2012 |
| RCVD_TIME | Received time of the email (24hr format) | 13:30:25 |
| CREATED_DATE | Created date of the file as captured by the original application or the created date of the file as captured by the file system | 09/08/2012 |
| CREATED_TIME | Created time of the file as captured by the original application or the created time of the file as captured by the file system (24hr format) | 17:03:55 |
| LASTMOD_DATE | Last modified date of the file as captured by the original application or the last modified date of the file as captured by the file system | 09/09/2012 |
| LASTMOD_TIME | Last modified time of the file as captured by the original application or the last modified time of the file as captured by the file system (24hr format) | 09:30:30 |
| LASTSAVEDBY | Data stored in the last author, last saved by, or last edited metadata field | fsmith |
| CATEGORY | Data stored in the category metadata field | Agenda |
| KEYWORDS | Data stored in the keywords metadata field | Meeting Agenda Weekly Participants |
| COMMENTS | Data stored in the comments metadata field | Old version |
| COMPANY | Data stored in the company metadata field | My Company |
| MD5HASH | MD5 hash of file | D41D8CD98F00B204E9800998ECF8427E |

Any file that cannot be converted to TIF will be produced in native format with a link to the native file included in the NATIVELINK field within the .DAT file. A single page TIFF placeholder should be included as the corresponding image for the file that cannot be converted. Some examples of files that should be provided in their native format are spreadsheets, multimedia files, databases, and technical drawings.

All associated text of the document should be provided in a single directory and named after the starting image key of the document.

The folder structure of the deliverable should follow the below format:
CSPGFROD001 – top level directory which should be unique for every production deliverable
-DATA – subdirectory containing Opticon and .DAT load files***
-IMAGES – subdirectory containing single page TIF images or color JPGs when requested
-NATIVES – subdirectory containing files provided in native format
-TEXT – subdirectory containing all corresponding .txt files (extracted or OCR)